## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THI OF PENNSYLVANIA AT
MOUNTAINVIEW, LLC

        Plaintiff,

                                Case No. _____

    v.

JAMES L. McLAUGHLIN, BY AND
THROUGH HIS ATTORNEY-IN-FACT,
MARY F. McLAUGHLIN,

        Defendant.

_____

## COMPLAINT TO COMPEL ARBITRATION
## AND STAY STATE COURT PROCEEDINGS

    COMES NOW, Plaintiff THI of Pennsylvania at Mountainview, LLC ("Plaintiff" or

"Facility"), and for its cause of action, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

    1.    Plaintiff is a Delaware limited liability company.  Plaintiff's sole member is THI

of Pennsylvania, LLC, which is itself a Delaware limited liability company.   THI of

Pennsylvania, LLC's sole member is THI of Baltimore, Inc., which is a Delaware corporation

with its principal place of business in Maryland.  For purposes of federal diversity jurisdiction,

Plaintiff thus is a citizen of the States of Delaware and Maryland.

    2.    Defendant James L. McLaughlin ("James") is a resident and citizen of

Pennsylvania.   Upon information and belief, James' wife and attorney-in-fact, Mary F.

McLaughlin ("Mary"), also is a resident and citizen of Pennsylvania.

    3.    This Court has jurisdiction over the subject matter of this action and the parties

hereto pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4 because there is complete diversity of

citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This judicial district is a proper venue under 28 U.S.C. § 1391(b) because James and Mary reside, and are subject to service of process, in this district and a substantial part of the events or omissions giving rise to the claim asserted in this action occurred in this district.

## FACTUAL BACKGROUND

### A.      Power of Attorney

5.      On November 16, 2007, James executed a Power of Attorney in which he appointed Mary as his attorney-in-fact.  A true and correct copy of the Power of Attorney is attached as **Exhibit A**.

6.      In the Power of Attorney, James authorized Mary "to perform all such acts as [Mary] in [her] absolute discretion may deem advisable, as fully as I could do, if I were personally present."  (Exhibit A at 2.)  James' Power of Attorney granted Mary the "fullest possible powers" to "make, execute and acknowledge all agreements, contracts, . . . writings, assurances and instruments for any matter" on James' behalf (Exhibit A at 2), and "[t]o pursue claims and litigation."  (Exhibit A at 3, ¶ (s).)

### B.      Admission Contract/Arbitration Agreement

7.      On April 7, 2013, Mary executed an Admission Contract to obtain care and treatment for James at Plaintiff's nursing-home facility.  A true and correct copy of the Admission Contract is attached as **Exhibit B**.

8.      On April 7, 2013, Defendant also executed a stand-alone "Voluntary Arbitration Agreement" ("Arbitration Agreement"), a true and correct copy of which is attached as **Exhibit C**.

9.     In the Arbitration Agreement, which Mary was directed to "***PLEASE READ***

***CAREFULLY***" (Exhibit C at 1 (emphasis in original)), the parties expressly agreed that:

> [I]n the event of ***any controversy or dispute between the parties, arising out of or relating to [the] Facility's Admission Agreement, or breach thereof, or relating in any way to [James'] stay at [the] Facility, or to the provisions of care or services to [James], including but not limited to any alleged tort, personal injury, negligence or other claim***; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right(s) granted under State law (collectively, "Disputes"), and the parties are unable to resolve such through negotiation, then ***the parties agree that such Dispute(s) shall be resolved by arbitration***.

(Exhibit C ¶ A(1.2) (emphasis added))

10.     In the Arbitration Agreement, Mary acknowledged that James was "not required to use the [] Facility for [his] healthcare needs and that there are numerous other health care providers in [Pennsylvania] where [the] Facility is located that are qualified to provide such care. Execution of this Agreement is voluntary and not a condition of admission." (Exhibit C ¶ A(1.1)) The Arbitration Agreement states that it "shall remain in effect for all care rendered to [James] at [the] Facility." (Exhibit C at 2)

11.     The Arbitration Agreement also provided that "[e]ach party shall have seven (7) business days from the execution of this Agreement to cancel the Agreement by notifying the other party in writing, by certified mail, return receipt requested, of its desire to cancel. [James'] admission to [the] Facility and the services provided will not be effected [sic] by the exercise of this cancellation provision." (Exhibit C ¶ C(1.1)) Neither Mary nor James exercised their right to revoke the Arbitration Agreement after it was signed.

12.     The Arbitration Agreement further provides that the arbitrator selected by the parties to resolve their dispute "must either be a retired Pennsylvania civil circuit court or federal judge or a member of the Pennsylvania Bar with at least ten (10) years of experience as an attorney." (Exhibit C ¶ A(1.3)) The Agreement also mandates that "[t]he arbitrator shall be

3

independent of all parties, witnesses and legal counsel, and no officer, director, affiliate, subsidiary or employee of a party, witness or legal counsel may serve as an arbitrator in the proceeding." (Exhibit C ¶ A(1.3)) The Arbitration Agreement further provides that "[d]iscovery in the arbitration proceeding shall be governed by the Pennsylvania Rules of Civil Procedure." (Exhibit C ¶ A(1.4))

13.     The Arbitration Agreement makes plain that "[t]he arbitrator shall hear and decide the controversy, and the decision shall be binding on all parties, and may be enforced by a court of competent jurisdiction." (Exhibit C ¶ A(1.7))

14.     Above the signature line where Mary signed her name, the Arbitration Agreement provides: "RESIDENT/REPRESENTATIVE UNDERSTANDS AND AGREES THAT HE/SHE IS GIVING UP AND WAIVING HIS/HER RIGHT TO A JURY TRIAL." (Exhibit C at 2)

15.     In the Admission Contract, Mary acknowledged that she "received and read the Admission Handbook and *other Admissions materials* and understand[s] that these documents *are made a part of this [Admission Contract] by reference herein.*" (Exhibit B at 11, § XVI (emphasis added)) The Arbitration Agreement was one of the referenced admission documents.

16.     Although the Arbitration Agreement was not a condition of James' admission to the Facility, upon execution, it was incorporated into, and became a part of, the Admission Contract. Thereafter, James' and Mary's duty to comply with the Arbitration Agreement was a term of the Admission Contract pursuant to which the Facility agreed to provide care and treatment to James. (Exhibit B ¶ I(5) ("By signing this [Admission Contract], [James] and/or [Mary] agree(s) to abide by the terms and conditions set forth in this Agreement"))

C.    **State Court Action**

17.    On August 7, 2014, James, through Mary as his attorney-in-fact, filed a civil action in the Court of Common Pleas of Westmoreland County, Pennsylvania, styled *Mary F. McLaughlin, as Attorney-in-Fact for James L. McLaughlin, v. Fundamental Long Term Care Holdings, LLC, n/k/a Hunt Valley Holdings, LLC et al.*, Civil Division, Docket No. 3928 of 2014 *("State Court Action")*.  A true and correct copy of James' Complaint in the State Court Action is attached as **Exhibit D**.

18.    In the State Court Action, James asserts personal injury claims against the Facility, which are predicated on allegedly deficient care and treatment that the Facility rendered to him during his residency.  (Exhibit D ¶¶ 88-125.)

**CAUSE OF ACTION TO COMPEL ARBITRATION**
**(Federal Arbitration Act, 9 U.S.C. § 4)**

19.    Plaintiff incorporates by reference the allegations set forth above, as if set forth fully herein.

20.    The Federal Arbitration Act ("FAA") mandates arbitration of claims that are subject to a written arbitration agreement and that affect interstate commerce.  Specifically, the FAA requires arbitration where (a) there is a valid, written agreement to arbitrate, and (b) a dispute is within the scope of the agreement.  Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  Section 4 of the FAA provides, in pertinent part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

5

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

21.    In actions involving written arbitration agreements, Section 3 of the FAA requires

that such actions be stayed pending resolution of the arbitration process:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

22.    The Power of Attorney authorized Mary to sign the Arbitration Agreement on

behalf of James.  Specifically, the Power of Attorney empowered Mary "to make, execute and

acknowledge *all* agreements, contracts, . . . writings, assurances and instruments for any matter"

on James' behalf.  (Exhibit A at 2 (emphasis added))  The Power of Attorney also granted Mary

authority to make decisions for James with respect to "pursu[ing] claims and litigation."

(Exhibit A at 3, ¶ (s))  Mary confirmed her intention that any disputes with the Facility regarding

James' care and treatment should be arbitrated by signing the Arbitration Agreement.  (Exhibits

C)  Accordingly, James is bound by the Arbitration Agreement.

23.    In addition to being a party to the Admission Contract and Arbitration Agreement

in his own right, James is a third-party beneficiary of these agreements between Mary and the

Facility.  Mary signed her own name to the Admission Contract and Arbitration Agreement in

her personal capacity, thus agreeing to be bound by their terms.   Although the Arbitration Agreement was not a condition of James' admission to the Facility, upon execution, it was expressly incorporated into, and became a part of, the Admission Contract.   James' care was the essential purpose of the Admission Contract, of which the Arbitration Agreement was a part. Mary signed the Admission Contract so that James would receive the benefits of admission and treatment at the Facility, which he did.   Accordingly, James is bound by the Arbitration Agreement as a third-party beneficiary.

24.     James also is barred from contesting the validity of the Arbitration Agreement by the doctrine of equitable estoppel.   Although the Arbitration Agreement was voluntary and not a condition of James' admission to the Facility, upon execution, it was incorporated by reference into, and became a part of, the Admission Contract.   Thereafter, James' and Mary's compliance with the Arbitration Agreement was a term and condition of the Facility's agreement to provide care and treatment to James under the Admission Contract.   James received the direct benefits of care and treatment at the Facility pursuant to the Admission Contract and thus, he (and Mary, as his attorney-in-fact) is precluded from repudiating the Arbitration Agreement that was a part of the Admission Contract.   Accordingly, Mary is barred from pursuing claims against the Facility on James' behalf in a judicial forum and instead must submit those claims to arbitration.

25.     Because James and Mary are bound by the Arbitration Agreement, they are required to resolve through arbitration "*any* controversy or dispute" with the Facility, including but not limited to "any alleged tort, personal injury, negligence or other claim." (Exhibit C at 1, ¶ A(1.2).)  James' causes of action against the Facility in the State Court Action are within the scope of, and subject to, the Arbitration Agreement.   The Arbitration Agreement thus bars James' assertion of these claims in any civil action and, instead, requires that they be resolved by

arbitration.  James' filing of the State Court Action, through Mary as his attorney-in-fact, is in direct violation of the Arbitration Agreement and, thus, a breach of the Admission Contract as well (of which the Arbitration Agreement is a part).

26.     The Admission Contract and Arbitration Agreement are contracts "evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2.  Among other things, James was a Medicare patient, like other residents at the Facility.  Medicare paid a portion of the costs of James' care, and the care of other residents, during his residency.  In addition, the Facility was certified to, and did, receive payments from the Pennsylvania Medicaid program, a substantial portion of which is funded by the Federal Government.  The Facility also purchased equipment, goods and services from vendors in other States that were used for the care and treatment of James and other residents.  These activities, in the aggregate, affect and involve interstate commerce, thus subjecting the Arbitration Agreement to the FAA.

27.     Accordingly, pursuant to the Arbitration Agreement, FAA and applicable law, the Facility is entitled to an order compelling James to submit his claims against the Facility to arbitration and staying James' claims against the Facility in the State Court Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff is entitled to, respectfully prays for, and demands a judgment:

A.     Ordering James to arbitrate his claims against the Facility in the State Court Action, in accordance with the Arbitration Agreement;

B.     Upon determining that the claims James has asserted against the Facility in the State Court Action are subject to the Arbitration Agreement, staying the State Court Action from further proceedings pending a resolution of this matter through the arbitration process;

C.      Staying further proceedings in the action *sub judice* pending the conclusion of arbitration of James' claims against the Facility or, alternatively, dismissing the action without prejudice; and

D.      Such other relief as the Court may deem just and proper.

Dated: November _____, 2014             Respectfully submitted,

                                         BUCHANAN INGERSOLL & ROONEY PC

                                         By: /s/ William J. Moorhead
                                               Eugene A. Giotto, Esq.
                                               Pa. Id. #58286
                                               William J. Moorhead, Esq.
                                               Pa. Id. #52761
                                         One Oxford Centre, 20th Floor
                                         301 Grant Street
                                         Pittsburgh, PA 15219
                                         Telephone: (412) 562-8800
                                         Facsimile:  (412) 562-1041
                                         *Attorneys for Plaintiff THI of Pennsylvania at Mountainview, LLC*