# REDACTED

# EXHIBIT B

# TO COMPLAINT

## ADMISSION AGREEMENT - PENNSYLVANIA

**RESIDENT NAME:** James McLaughlin

**RESIDENT NUMBER:** 282196

**DATE OF ADMISSION:** 4-4-13

THIS ADMISSION AGREEMENT ("Agreement") as above dated is by and among _Mt View Specialty Care_ ("Facility"), _James McLaughlin_ ("Resident") and/or _____ ("Resident's Durable Power of Attorney for Health Care"/"Resident's Legal Guardian"/"Resident's Responsible Party" hereinafter collectively "Representative").

WHEREAS, the parties to this Agreement wish to admit Resident to Facility and hereto agree as follows:

### I. GENERAL CONDITIONS

1. **Inducement:** Resident and/or Representative affirm that all information submitted to Facility in order to induce Facility to enter into this Agreement is true and correct, including but not limited to financial information, medical history and medical diagnosis. Submission of any false information will constitute a breach of this Agreement.

2. **Personal Property:** It is understood that Facility is not responsible for either damage to or the theft/loss of valuables, monies or clothing belonging to Resident unless they are held in trust by Facility for safekeeping and the damage, theft or loss was caused by the negligent or willful conduct of Facility personnel. Personal property will not be considered to be held in trust unless the policies and procedures outlined in the Admission Handbook, which is made a part of this Agreement by reference herein, and any future amendments thereto, have been followed. Facility reserves the right to prohibit certain personal effects, funds, or other property of Resident in accordance with state and federal law.

The Facility is not liable for either damages to or theft/loss of any personal belongings or personal care items, such as dentures, hearing aides and eyeglasses, except with respect to damage, theft or loss caused by the negligent or willful conduct of Facility personnel.

3. **Emergency Care:** In case of an emergency and Resident's personal physician is not available, Resident and/or Representative hereby gives permission to Facility to retain a physician on Resident's behalf. The physician so retained will bill Resident directly and Facility will not be responsible for payment of the bill for such service.

4. **Representative:** Representative will act on behalf of Resident for all purposes permitted under applicable law. Representative will pay all fees and charges incurred hereunder by or on behalf of Resident using proceeds from Resident's assets or estate. Representative may act in more than one capacity and will be bound by the applicable terms and conditions of this Agreement. Except when Representative has access to Resident's assets, or as otherwise expressly provided to the contrary herein, or as permitted by state or federal law, Representative will not become personally liable for the payment of Resident's fees and charges by signing this Agreement. To the extent possible, Resident acknowledges and consents to the execution of this Agreement by Representative.

5. **Terms and Conditions:** By signing this Agreement, Resident and/or Representative agree(s) to abide by the terms and conditions set forth in this Agreement and the policies of Facility, as same apply and as may change from time to time.

## II. AGREEMENT FOR CARE

### A. HEALTH CARE CENTER AGREES TO:

1. Upon execution of this Agreement, admit Resident only with a physician's order, assist in obtaining the services of a physician if a personal physician becomes unavailable and obtain emergency physician services when required. Resident is not deemed admitted until such time as agreements required by law have been appropriately executed. This provision may be waived in writing by Facility, at its sole discretion.

2. Maintain written records of financial transactions with Resident and/or Representative responsible for payment. Resident has the right to have personal funds held in trust in accordance with applicable state and federal law, as may be amended from time to time. All provisions for establishing a resident trust account are further outlined in the Admission Handbook.

3. Furnish room, routine meals, nursing care, personal care, or custodial care to Resident. This provision expressly excludes extraordinary services, including but not limited to, physician care, private duty nursing, private sitters, specialty foods and therapies not required by law. Resident will be placed in a semi-private room, absent medical need for a private room as determined by Facility staff. Residents residing in private rooms will be billed accordingly.

4. Assist in application for private insurance benefits, but not to accept assignment thereof unless otherwise noted as an exception herein.

5. Assist Resident and/or Representative in applying for Medicare or Medicaid benefits where applicable.

6. Provide assistance in daily living and restorative nursing care in accordance with Resident's care plan, where appropriate. Resident reserves the right to refuse said treatment. If said treatment is refused, Resident and/or Representative will hold Facility harmless from any injury as a result thereof.

7. Arrange for transfer of Resident to a hospital upon physician's order, or in an emergency situation. Expenses of transfer and care of Resident at the hospital are not the responsibility of Facility. Resident and/or Representative will be responsible for arranging payment of those services.

8. Obtain and administer medication as may be prescribed. Expenses for the cost of obtaining the medications are not the responsibility of Facility. Resident and/or Representative will be responsible for arranging payment for the medications. Resident has the right to refuse medication. If Resident refuses medication, Resident and/or Representative will hold the Facility harmless from any liability resulting therefrom.

9. Provide an activities program for Resident, components of which will be at the discretion of the Facility.

10.  Furnish Resident bed linens and hospital gowns. All personal clothing will be supplied by Resident or Representative and, will be properly labeled as outlined in the Admission Handbook for identification purposes.

B.  **RESIDENT AND/OR REPRESENTATIVE AGREE(S) TO:**

1.  Provide complete and accurate information regarding Resident to Facility as requested. This information must be updated on a regular basis and when any substantial change occurs.

2.  Provide to Facility, prior to or at the time of admission, orders from Resident's attending physician for the immediate care of Resident. Provide a medical history, physical examination, current physician's orders and physician's statement that Resident is free from communicable disease at the time of admission of Resident or within the required time limitation. If Resident is suffering from communicable disease, Resident and/or Representative will provide a physician's certificate that the disease is not in a transferable stage, or that adequate or appropriate isolation measures are being carried out to control transmission of the disease. Facility retains the right to refuse admission to any Resident suffering from a communicable disease, whether that disease is in a transferable stage or not, so long as said refusal is in compliance with state and federal law. Resident's attending physician will provide, at Resident's expense, a physical examination performed either within five (5) days prior to admission or within forty-eight (48) hours following admission.

3.  Permit staff of Facility to perform such functions as may be necessary to maintain the well-being of Resident, including but not limited to, assistance with bathing and hygiene, dressing, toileting, daily activities, performance of restorative nursing care, as appropriate (including bowel and bladder training), and the performance of therapies determined necessary by a physician, but limited to those therapies for which Resident has funding. Resident has the right to refuse medication and treatment as prescribed by Resident's physician. In accordance with the policies of Facility, in the event that Resident refuses to abide by the physician's orders, Facility retains the right to discharge Resident from Facility if, in the judgment of appropriate Facility staff, it is determined that discharge or transfer is appropriate under applicable federal and state law. In addition, if the Resident refuses to abide by the physician's order, Resident will hold Facility harmless from any injury as a result thereof.

4.  Pay all fees and charges described in this Agreement upon the terms agreed to under Section III herein.

5.  Adhere to Facility's *Bed Reservation Policy* as outlined in the Admission Handbook and the *Facility's Policy and State Requirements for a Temporary Leave Bed-Hold*.

6.  Provide and be responsible for personal items of clothing and property.

7.  (a) Remove Resident from Facility within thirty (30) days, upon receipt of a Notice of Discharge and Transfer for any of the reasons set forth in state or federal law; (b) cooperate with Facility to locate alternative placement in the event of a transfer or discharge; (c) remove Resident from Facility in less than thirty (30) days if the situation warrants immediate removal. All transfers and discharges will be carried out in accordance with state and federal law.

8.  In the event Resident no longer requires Medicare or Medicaid services, Resident and/or Representative agree that Resident will be relocated to a bed certified for the appropriate level of care needed. Please note, room-to-room changes within the same certified unit of Facility are not considered a transfer for purposes of this section.

9. Notify Facility at least three (3) days in advance of Resident's voluntary discharge from Facility, excepting discharge as the result of an emergency. If advance notice is not provided, Resident and/or Representative will be liable for payment of three (3) days.

10. Accept full responsibility for, absolve and release Facility, its agents, Medical Director and/or attending physicians from any liability for any event, including but not limited to, injury, illness, accident, or deterioration of medical condition suffered by Resident when Resident is not on the Facility premises and is not under the care, custody and/or supervision of Facility and its staff.

11. Abide by Facility's policies and procedures as amended from time to time and outlined in the *Admission Handbook* and other Admissions materials, which are made a part of this Agreement by reference herein, as well as the Resident Rights under applicable state law and any future amendments. Facility's rules, regulations, policies and procedures shall not be construed as imposing contractual obligations on Facility and are subject to change.

12. Cooperate with Facility in securing third-party payments, including but not limited to promptly and thoroughly completing all required documentation necessary to obtain such payments...

13. Upon the transfer, discharge or death of Resident, Resident and/or Representative will be responsible for collecting and moving Resident's personal property within forty-eight (48) hours of the transfer/discharge. If the property is not moved and alternate arrangements are not made with the Facility, Facility will remove all property from the Resident's room and store same for a period of two (2) years. Facility is not responsible for any damage, theft or loss to Resident's property during this period of time. Further, Resident and/or Representative will be liable for any costs of storage and assume all risks associated therewith. If personal property is not claimed within two (2) years of the transfer/discharge, said property will be disposed of in accordance with applicable state law.

14. Resident and/or Representative will be responsible for any damage caused to Facility property by Resident or his/her guests beyond normal wear and tear and will pay for such damage, based on the actual charge to Facility for repair or replacement.

15. Resident and/or Representative will be responsible for obtaining adequate information from Resident's attending physician before any extraordinary treatment. Absent knowledge that the consent was not informed, Facility staff may rely upon the physician's written order as evidence that the physician secured informed consent.

16. Resident and/or Representative will be responsible for any damages or injuries caused by Resident to other persons, and will indemnify and hold Facility harmless from any claims, actions or proceedings against Facility resulting from Resident's actions or omissions.

17. In the event of Resident's death, Representative agrees to authorize Facility to notify the person(s) designated by Resident. Additionally, Facility is authorized to transfer Resident's body to the designated funeral home. If Resident has not designated a funeral home, Resident's family will be consulted and Resident's body will be transferred in accordance with their wishes. All costs associated with the transfer and funeral expenses will be the responsibility of Resident's estate.

18. In the event Resident becomes incapable of making his/her medical decisions and no guardian, proxy, surrogate or agent under a valid durable power of attorney for health care is available, Facility is authorized to seek court appointment of a legal guardian. All costs and attorneys' fees associated therewith will be borne by Resident or Resident's estate.

19. Resident and/or Representative agree that they will present any grievances with Facility in an orderly manner. Information on the Facility's Grievance Procedure can be found in the *Admission Handbook* and the *Resident Rights* under applicable state law. Nothing herein will preclude Resident or any other party from filing a complaint with any governmental agency, but will be ancillary thereto. Facility will review and investigate all complaints in a timely manner.

20. Resident and/or Representative will be responsible for paying all costs, expenses and reasonable attorneys' fees, whether or not suit is brought, in the event costs, expenses, and/or attorneys' fees are incurred by Facility in the collection of sums due from and owed by Resident or any other party on Resident's behalf to Facility.

## III. FINANCIAL AGREEMENT

Resident and/or Representative will be responsible for immediate payment of all charges incurred as follows:

1. Room and board, including meals, laundering of linens and bedding, nursing care, personal care or custodial care for the health, grooming and well-being of Resident in *[check one]* (☐ - private)   (☐ - semi-private) accommodations, for a basic fee of $_____ per day, payable one month in advance. In the event Resident is unable or unwilling to receive any of the services included in the room and board charge, such as meals, laundry, etc., no adjustment will be made to the daily rate. Payment for all invoices is due upon receipt. In the event public aid funds are denied for services for which coverage has been expected, Resident and/or Representative will be responsible for payment and will pay such charges upon receipt of invoice. Resident and/or Representative agree(s) to pay any rate change charged to Resident so long as each party to this Agreement is given at least thirty (30) days written notice of the new rate, including any increases or adjustments in Resident's liability by any financial third party or regulatory agency. Additional notice may be provided under applicable state regulations.

   a. Additional services and items may be provided at a separate charge. The current rates charged for additional services and items are set out in Exhibit A. These charges may change from time to time. Resident and/or Representative agree(s) to pay the charges in effect at the time that the service is performed or the item supplied. Facility agrees to give thirty (30) days advance written notice to Resident and/or Representative of any price changes.

   b. Services or items not provided by Facility may be supplied by third-party vendors. Facility will assist Resident and/or Representative in securing such items or services, but will assume no liability for providing the services and makes no representations or warranties regarding the quality of such items or services. Facility assumes no liability for payment of any services provided by third-party vendors.

   c. The daily rate will be charged for the day of admission. Private pay residents will not be charged the daily charge for the day of discharge if discharge occurs before 12:00 p.m., unless the discharge is for emergency medical treatment. Medicare and Medicaid Residents will not be charged a daily charge for the day of discharge. The daily rate will be charged, if applicable, on the day of death.

2. The Facility may charge a private pay resident a late payment fee of interest at a rate equal to the lesser of (a) eighteen percent (18%) per annum or, if lesser, the highest percentage allowed by law, on all charges (exclusive of interest) for which resident is liable that are outstanding for more than thirty (30) days from the date on which the resident was billed for said charges or (b) the amount set forth in any Agreement Addendum.

3. Refunds will be made for any unused portions of room and board services for which pre-payment has been received. The refund of the unused portion of prepaid fees and charges will be made to the resident or his/her representative within thirty (30) days after the resident's transfer, discharge or death; EXCEPT that Facility may deduct any outstanding monies due to Facility from said overpayment. In the event of a resident's death, refunds will be issued to resident's Estate. If a personal representative has not been appointed for the Estate by the probate court, such refunds will be made in accordance with state and federal law.

## IV. MEDICAID BENEFICIARIES

1. **Covered Services.** If Resident is a Medicaid recipient, the Medicaid Program will reimburse the Facility for certain skilled services ordered by a physician. Reimbursable routine services include: dietary services; activities programs; room and bed maintenance services; and customary personal hygiene items and services as required to meet the needs of residents, including, but not limited to: hair hygiene supplies, comb, brush, bath soap, disinfecting soaps or specialized cleansing agents (when indicated to treat special skin problems or to fight infection), razor, shaving cream, toothbrush, toothpaste, denture adhesive, denture cleaner, dental floss, moisturizing lotion, tissues, cotton balls, cotton swabs, deodorant, incontinence care and supplies, sanitary napkins and related supplies, towels, washcloths, hospital gowns, over the counter drugs, hair and nail hygiene services (other than Beauty Shop fees), bathing, and basic personal laundry.

2. **Non-Covered Services.**

   a. Medicaid is a cost-sharing program. Resident's monthly income must be contributed to the cost of his or her care. Medicaid determines how much of the Resident's monthly income must be paid to the Facility (also called "patient liability"). To the extent permitted by law, Resident's monthly Social Security and pension funds, minus the personal allowance retained by Resident (or other allowance as set by law), will be paid to the Facility.

   b. Resident may purchase from the Facility certain miscellaneous products and services that are not covered by Medicaid. An itemized list of fees for these additional products and services is available in the Admissions Office and may be reviewed by Resident and/or Representative upon request during normal business hours of the Admissions Office.

3. **Assignment of Benefits.** In consideration for services rendered by the Facility to Resident, Resident and/or Representative hereby assigns to the Facility, Resident's right to reimbursement from Medicaid for services rendered by the Facility and authorizes the Facility to receive payments from Medicaid pursuant to this assignment. Resident and/or Representative acknowledges that, to the extent Medicaid refuses to pay for any services rendered to Resident at the Facility, Resident and/or Representative will remain liable for payment of those services to the extent permitted by applicable law. Resident and/or Representative agrees to cooperate with the Facility in collecting all proceeds due from Medicaid.

4. **Benefit Disallowance.** If Resident's third-party eligibility or coverage is denied or terminated for any reason, Resident and/or Representative will pay, from Resident's assets, any and all unpaid charges for care previously rendered to the extent permitted by law.

5. **Application/Appeals.** Resident and/or Representative authorizes Facility to apply for government or private benefits on Resident's behalf and to appeal the denial of such benefits. Resident and/or Representative agrees to cooperate fully in obtaining such benefits, including but not limited to promptly and thoroughly completing all required documentation necessary to obtain such payments. Resident and/or Representative remains responsible for and will continue to pay for services rendered during the pendency of any eligibility or benefit application.

## V. MEDICARE BENEFICIARIES

1. **Covered Services.** If Resident is a Medicare recipient, the Medicare Program will reimburse Facility for certain skilled services such as nursing services and certain therapies ordered by a physician. Reimbursable routine services include: dietary services; activities programs; room and bed maintenance services; and customary personal hygiene items and services as required to meet the needs of residents, including, but not limited to, hair hygiene supplies, comb, brush, bath soap, disinfecting soaps or specialized cleansing agents (when indicated to treat special skin problems or to fight infection), razor, shaving cream, toothbrush, toothpaste, denture adhesive, denture cleaner, dental floss, moisturizing lotion, tissues, cotton balls, cotton swabs, deodorant, incontinence care and supplies, sanitary napkins and related supplies, towels, washcloths, hospital gowns, over the counter drugs, hair and nail hygiene services (other than Beauty Shop fees), bathing, basic personal laundry and medically related social services.

2. **Non-Covered Services.** Resident and/or Representative will be required to pay certain other "Allowable Charges" which include, but are not limited to:

   a. Fees for certain products and services not covered under the Medicare program. Fees for such services will be identical those charged to private pay residents of the Facility for the same products and services.

   b. Fees for certain products and services that are more expensive than the products and services covered under the Medicare program (e.g., a private room), as requested by a Resident and/or Representative. Fees charged for the more expensive products and services will be based on the difference between the fees charged to private pay residents of the Facility and the customary charge for the same products and services under Medicare. The Facility staff will inform any individual requesting additional or more expensive products or services that there will be a specified charge.

   c. Certain deductibles and co-insurance amounts under the Medicare Program.

3. **Assignment of Benefits.** In consideration for services rendered by the Facility to Resident, Resident and/or Representative hereby assigns to the Facility, the Resident's right to reimbursement from Medicare for services rendered by the Facility and authorizes the Facility to receive direct payments from Medicare pursuant to this assignment. Resident and/or Representative acknowledges that, to the extent Medicare refuses to pay for any services rendered to Resident at the Facility, Resident and/or Representative shall remain liable for payment of those services to the extent permitted by applicable law. Resident and/or Representative agrees to cooperate with the Facility in collecting all proceeds due from Medicare.

Original: Business File • Photocopy: Resident/Representative

4. **Benefit Disallowance.** If Resident's third-party eligibility or coverage is denied or terminated for any reason, Resident and/or Representative shall pay, from Resident's assets, any and all unpaid charges for care previously rendered to the extent permitted by law.

5. **Application/Appeals.** Resident and/or Representative authorizes Facility to apply for government or private benefits on Resident's behalf and to appeal the denial of such benefits. Resident and/or Representative agrees to cooperate fully in obtaining such benefits, including but not limited to promptly and thoroughly completing all required documentation necessary to obtain such payments. Resident and/or Representative remains responsible for and will continue to pay for services rendered during the pendency of any eligibility or benefit application.

## VI. PRIVATE PAY/INSURANCE

1. **Routine Services.** If Resident is paying for his/her stay privately OR if he/she is having his/her stay paid for through a third-party insurance carrier, Resident and/or Representative will reimburse the Facility for routine services ("Routine Services") which include: routine nursing services; routine dietary services; routine activities programs; and routine room and bed maintenance services. Beauty shop fees are not included in the daily rate. Resident and/or Representative shall pay a deposit of two months' basic room and board prior to admission. Each subsequent monthly payment is due on or before the 10th day of the month.

2. **Ancillary Services.** Resident and/or Representative may purchase services and products that are not included in Routine Services from the Facility. An itemized list of fees for these additional services and products is available in the Admissions Office and may be reviewed by Resident and/or Representative upon request during normal business hours of the Admissions Office. Resident and/or Representative shall pay for ancillary services at the end of the month in which such services are rendered.

3. **Assignment of Benefits.** In consideration for services rendered by the Facility to Resident, Resident and/or Representative hereby assigns to the Facility, the Resident's right to reimbursement from any insurance company paying benefits to Resident for services rendered by the Facility and authorizes the Facility to receive payments from such insurance company pursuant to this assignment. Resident and/or Representative acknowledges that, to the extent such insurance company refuses to pay for any services rendered to Resident at the Facility, Resident and/or Representative shall remain liable for payment for these services to the extent permitted by applicable law. Resident and/or Representative agrees to cooperate with the Facility in collecting all proceeds due from such insurance company.

4. **Benefit Disallowance.** If Resident's insurance coverage is denied or terminated for any reason, Resident and/or Representative shall pay, from Resident's assets, any and all unpaid charges for care previously rendered to the extent permitted by law.

5. **Application/Appeals.** Resident and/or Representative authorizes Facility to apply for government or private benefits on Resident's behalf and to appeal the denial of such benefits. Resident and/or Representative agrees to cooperate fully in obtaining such benefits, including but not limited to promptly and thoroughly completing all required documentation necessary to obtain such payments. Resident and/or Representative remains responsible for and will continue to pay for services rendered during the pendency of any eligibility or benefit application.

## VII. GOVERNING LAW

This Agreement will be governed by and construed in accordance with applicable Federal regulations and those laws of the State in which the Facility is located. This Agreement will be binding and inure to the benefit of each of the undersigned parties and their respective heirs, personal representatives, successors and assigns.

## VIII. SEVERABILITY

If any provision(s) of this Agreement will be deemed to be illegal or otherwise unenforceable, all other provisions will remain in full force and effect as if the invalid provision had not been part of this Agreement.

## IX. CAPTIONS

Captions are for the purpose of reference only and do not govern, limit, modify, enlarge or in any manner affect the scope, meaning and intent of the provisions of this Agreement, nor will such captions be given any legal effect.

## X. MODIFICATIONS

Facility reserves the right to unilaterally modify this Agreement to conform to law and regulations as may be passed from time to time. Reasonable notice, considering all of the circumstances, will be given to Resident and/or Representative when any change is made in accordance with this paragraph. Any other modification, except as otherwise specifically reserved herein, will be made in writing and signed by all relevant parties.

## XI. WAIVER

Facility reserves the right to waive any obligation of Resident under the provisions of this Agreement in its sole and absolute discretion. No term, provision or obligation of this Agreement will be deemed to have been waived by Facility unless in writing, signed by Facility. Any waiver of any provision of this Agreement will not be deemed a waiver of any other term, provision or obligation of this Agreement, and the other obligations of Resident and/or Representative and this Agreement will remain in full force and effect.

## XII. RESIDENT

Use of the term "Resident" herein includes the Resident and any person with legal authority to handle Resident's funds or property and/or make medical decisions depending on the context in which the term is used.

## XIII. ASSIGNABILITY

This Agreement is fully assignable by Facility in the event that Facility is sold and/or the license is transferred such that a new licensee operates Facility. This Agreement, at Facility's option and without notice to Resident and/or Representative, may be automatically assigned to the new licensee and will be fully binding upon Resident and the new licensee.

## XIV. INFORMATION RELEASE/BILLING AUTHORIZATION

1. Resident Information included in Facility's records is confidential. Unauthorized persons will be not allowed to review these records without Resident's consent, except as required or permitted by law. Resident's records are the sole property of Facility, but may be reviewed by authorized person(s) upon request and by appointment and in the presence of a Facility representative. Authorized persons may request and purchase photocopies of the medical record or any portion thereof with two (2) business days notice, unless a longer time period is permitted under state law. The fees for reproduction will be billed at the current rate permitted by applicable state or federal law.

2. Resident and/or Representative authorize(s) Facility to release all or part of Resident's Facility records to any person or entity which has or may have a legal contractual obligation to pay all or a portion of the costs of care provided to Resident, including but not limited to Medicare, Medicaid, hospital or medical service companies, insurance companies, workers' compensation carriers, welfare funds and/or Resident's employer.

3. Resident and/or Representative authorize(s) Facility to release all or any part of Resident's Facility records to any medical professional or institution responsible for Resident's medical or nursing care when Resident is receiving treatment, is transferring, or is discharged from Facility.

4. Resident and/or Representative authorize(s) Facility to send and release information to Medicare, Medicaid or other third party payment sources for the purpose of receiving payment of covered services. Resident and/or Representative further authorize(s) and request(s) that Medicare, Medicaid, their representatives, their intermediaries and other third party payment sources send payment for covered services directly to Facility. This authorization does not release Resident or Representative from financial responsibility for charges that may be non-covered or denied by Medicare or Medicaid, or other third party payer.

## XV. MISCELLANEOUS

1. In the event Resident is unable to physically sign his/her name, Resident will sign below by making a mark. If this is the manner in which the Agreement is signed, the witness will verify that Resident was aware that he/she was signing an Agreement and that it was his/her intent to sign.

2. In the event Resident has appointed a representative to control his/her assets and even if such appointment has not been made through a legal document, Representative will be fully bound to the extent of those assets to the terms of this Agreement.

3. A copy of any court order appointing a guardian for the Resident's person or estate must be supplied to Facility. This court order must appoint the legal guardian to sign contracts on behalf of Resident. The legal guardian will only be given such rights under this Agreement as are set out in that court order. In addition, the legal guardian must file with Facility on an annual basis the same financial documents filed with the court showing the resources available to pay for Resident's care.

4. Representative will supply Facility with a copy of any power of attorney, durable power of attorney, durable power of attorney for health care, or other legal documentation permitting him or her to act on Resident's behalf. It is understood that the Representative will pay for the care of Resident in accordance with this Agreement to the extent that he/she has access to Resident's income or resources. Failure to utilize the Resident's income or resources for payment to the Facility may subject Representative to legal action. Facility may require an accounting from time to time as to the type of said resources. Failure to supply such an accounting will be a breach of this Agreement.

5. In the event that an individual voluntarily agrees to become legally responsible for payment for the care and treatment of Resident, said Representative will be fully bound to the terms of this Agreement. Please note: This Facility does not require a third-party guarantor.

## XVI. ENTIRE AGREEMENT

By signing below, the undersigned hereby acknowledge that he/she has read this page and all preceding pages and understands that this Agreement represents the entire agreement and understanding between the parties and supersedes all previous representations, understandings or agreements, oral or written, between the parties and that this Agreement may not be amended except by written agreement of both parties.

The undersigned further acknowledges that he/she has made the above promises and representations in order to induce Facility to enter into this Agreement. The undersigned further acknowledges that, by signing this Agreement, the Facility is relying upon the truthfulness of the promises and representations he/she has made herein. The undersigned further agrees that if any term or provision of the Agreement is found by a court or agency of competent jurisdiction to be legally unenforceable, the term and provision will be deemed severed from this Agreement and the remaining terms or provisions will be fully enforceable.

The undersigned further acknowledges that he/she has received and read the *Admission Handbook* and other Admissions materials and understand that these documents are made a part of this Agreement by reference herein.

| Signature of Resident / Date: 4-7-13 | Printed Name of Resident: James McLaughlin |
|---|---|

Resident Social Security Number: REDACTED

| Witness Signature / Date | Printed Name of Witness |
|---|---|

Or

| Signature of Representative, if any / Date | Printed Name of Representative |
|---|---|

| Witness Signature / Date | Printed Name of Witness |
|---|---|

Representative Social Security No. (Voluntary Info.)

| Signature of Facility Official | Printed Name of Facility Official & Title |
|---|---|

Date