IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THI OF PENNSYLVANIA AT MOUNTAINVIEW, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 14-1616 Chief Magistrate Judge Maureen P. Kelly |
| JAMES L. McLAUGHLIN *by and through his Attorney-In-Fact,* MARY F. McLAUGHLIN, | ) ) ) | Re: ECF No. 5 |
| Defendant. | ) | |

## OPINION

**KELLY, Chief Magistrate Judge**

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff THI of Pennsylvania at Mountainview, LLC ("THI"), is the operator of a skilled nursing home in Westmoreland County, Pennsylvania. Defendant James L. McLaughlin was a resident at THI's facility. During his residency, it is alleged that Mr. McLaughlin suffered several injuries as a result of the negligent care received by him, including fractures occasioned by multiple falls, various severe infections, dehydration and caloric malnutrition, weight loss of 21 pounds in thirty days, poor hygiene and severe pain.

On August 7, 2014, Mr. McLaughlin, by and through his Attorney-in-Fact (and wife), Mary F. McLaughlin, filed a Complaint in the Court of Common Pleas of Westmoreland County alleging claims against Plaintiff and others for, *inter alia,* negligence (professional and ordinary), corporate negligence, custodial neglect, and punitive damages.

In response to Mr. McLaughlin's lawsuit, on November 26, 2014, THI filed a Complaint to Compel Arbitration and Stay State Court Proceedings in this Court (ECF No. 1), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and the terms of the Admission Contract and Voluntary Arbitration Agreement ("the Agreement") executed on behalf of Mr. McLaughlin prior to his admission to Plaintiff's facility.

The Agreement provides as follows:

A. Arbitration Provisions.

    1.1. It is understood by Resident and/or his Representative that he or she is not required to use the aforesaid Facility for Resident's healthcare needs and that there are numerous other health care providers in the State where Facility is located that are qualified to provide such care. Execution of the Agreement is voluntary and not a condition of admission.

    1.2 It is further understood that in the event of any controversy or dispute between the parties arising out of or relating to Facility's Admission Agreement, or breach thereof, or relating in any way to Resident's stay at Facility, or to the provisions of care or services to Resident, including but not limited to any alleged tort, personal injury, negligence or other claim; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right(s) granted under State law (collectively "Disputes"), and the parties are unable to resolve such through negotiation, then the parties agree that such Dispute(s) shall be resolved by arbitration.

\* \* \*

**RESIDENT/REPRESENTATIVE UNDERSTANDS AND AGREES THAT HE/SHE IS GIVING UP AND WAIVING HIS/HER RIGHT TO A JURY TRIAL.**

(ECF No. 5-3). This agreement was signed on April 7, 2013, by Mrs. McLaughlin on her husband's behalf.

Mr. McLaughlin has filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 5), contending that because the Agreement was not signed by an authorized representative of THI, it is not binding on the parties. In addition, Mr. McLaughlin argues that the Agreement does not evidence a transaction in interstate commerce and therefore falls outside of the scope of the

2

FAA. Alternatively, Mr. McLaughlin seeks an order allowing discovery as to the circumstances surrounding the presentation and execution of the Agreement.

For the following reasons, the Motion to Dismiss (ECF No. 5) is denied. Further, because discovery is requested as to the limited issue of the circumstances surrounding the execution of the Agreement, Mr. McLaughlin's alternative motion to allow discovery is granted.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 513 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a

3

cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002).

## III. DISCUSSION

The FAA provides in part as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2. "In enacting §2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of

4

claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Accordingly, the FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co., v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009).

However, because arbitration is a contractual matter, prior to compelling arbitration pursuant to the FAA, a court must first determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement. Glover ex rel. Glover v. Darway Elder Care Rehab. Ctr., No. 4:13-CV-1874, 2014 WL 931459, at *6 (M.D. Pa. Feb. 4, 2014) *report and recommendation adopted*, No. 4:13-CV-01874, 2014 WL 931470 (M.D. Pa. Mar. 10, 2014) (citing Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted)). Arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." First Liberty Inv. Grp. v. Nicholsberg, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks omitted).

**A. Enforceability of Agreement**

While a presumption in favor of arbitration applies to the question of whether a particular dispute falls within the scope of an existing agreement, there is no presumption to the threshold question as to the existence of an agreement to arbitrate. Century Indem. Co., 584 F.3d at 526-27. "[W]hen determining whether there is a valid agreement to arbitrate between the parties,… we apply ordinary state-law principles of contract law. First Options, 514 U.S. at 944, 115 S.Ct. at 1924. Because the FAA requires us to place arbitration agreements on an equal footing with other contracts when determining whether the parties have agreed to arbitrate, we cannot subject a purported arbitration agreement otherwise within the scope of the FAA and satisfying its

requirements to a standard more demanding than that which we would apply to other agreements under the applicable state law." Century Indem. Co.,584 F.3d at 532 (3d Cir. 2009).

Here, Mr. McLaughlin contends that the Agreement is neither valid nor enforceable because an authorized representative of THI failed to sign the agreement. Mr. McLaughlin argues that in failing to sign the Agreement, "Plaintiff's actions fail to manifest any intent to be bound by the arbitration agreement's terms." (ECF No. 6, p. 7).

The Court looks to state law to determine the effect of a party's failure to sign the agreement in the determination of whether a contract is binding. Under applicable Pennsylvania law, "'signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties.'" Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 584 (3d Cir. 2009) (quoting Commerce Bank/Pennsylvania v. First Union Nat'l Bank, 911 A.2d 133, 145–46 (Pa. Super. Ct. 2006) and Shovel Transfer & Storage, Inc., v. Pa. Liquor Control Bd., 559 Pa. 56, 739 A.2d 133, 136 (1999)). Rather, where signatures are absent, a party can manifest assent through written or spoken works, or through conduct. Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 552 F. Supp. 2d 515, 525 (E.D. Pa. 2008)( citing Murphy v. Burke, 311 A.2d 904, 907 (Pa. 1973) and Restatement (Second) of Contracts § 5 cmt. a).

In this case, THI requested that Mr. McLaughlin's authorized representative sign the Agreement, and completed the terms of the Agreement to include the identity of the parties and the date of execution. THI retained the Agreement in the event of legal action, and asserted its rights thereunder. Accordingly, under applicable Pennsylvania contract law, there is no reasonable basis to conclude that THI did not agree to the Agreement. Further, with regard to the FAA, the absence of a signature does not render the Agreement unenforceable. See Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 720 (E.D. Pa. 2009) citing Genesco v. T Kakiuchi & Co.,

815 F.2d 840, 846 (2nd Cir. 1987) ("[f]inally, Plaintiffs argue that the Arbitration Agreements are not binding because some were unsigned by Defendant New Day, the party attempting to enforce them. The existence of a signature by one of Defendants' representatives is immaterial. While the FAA requires a writing, it does not require that the writing be signed by the parties").

Defendant cites Bair v. Manor Care of Elizabethtown, PA, LLC, 108 A.3d 94 (Pa. Super. 2015), a recent decision of the Pennsylvania Superior Court for the proposition that a nursing home's failure to affix a signature to an arbitration agreement rendered it unenforceable, even when asserted on its own behalf to compel arbitration of the plaintiff's wrongful death and survival action. The facts in the instant case are distinguishable.

First, the "Voluntary Arbitration Agreement" at issue in Bair was "a form with blanks on the first page for the insertion of the names of the contracting parties and the date. None of these blanks was completed. In addition, the agreement provides that, 'arbitration is described in the voluntary arbitration program brochure,' a copy of which is 'attached and made part of this agreement.' Voluntary Arbitration Agreement, at 1. The brochure was not attached." Bair at 96. The Superior Court determined that the form "lacked essential terms such as the names of the contracting parties, the date of the agreement, and the brochure describing the arbitration process, which was expressly made part of the agreement." Id. at 97. Thus, while the Superior Court found no mutual assent because of the absence of the facility's signature, it premised this result on finding that "Manor Care's failure to fill in essential terms such as the names of the parties *and* sign the agreement … fell short in manifesting its consent to arbitrate." Id. at 98 (italics added).

Here, all essential terms were completed and Mr. McLaughlin's authorized representative executed the Agreement, agreeing that she understood and "that [she was] giving up and waiving

7

[her] right to a jury trial." ECF No. 5-3. The only missing component is a signature by THI's authorized representative. In light of its conduct, however, the Court cannot reasonably find that THI did not assent to the Agreement.

### B. Interstate Commerce Requirement

As acknowledged by the parties, the FAA applies to arbitration agreements that are part of a written contract "evidencing a transaction involving interstate commerce." 9 U.S.C. § 2. Mr. McLaughlin contends that this requirement is not met because the proffered Agreement does not evidence a transaction in interstate commerce. This argument is readily resolved in favor of THI.

"Commerce" for purposes of FAA coverage "is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." Valley View Health Care, Inc. v. Chapman, 992 F. Supp. 2d 1016, 1038 (E.D. Cal. 2014), *appeal dismissed* (Aug. 7, 2014)(quoting Foster v. Turley, 808 F.2d 38, 40 (10th Cir. 1986); and see Allied–Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273–274 (1995) ("we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'"). "This is not a rigorous inquiry; in fact, the contract need only the slightest nexus with interstate commerce." Crawford v. W. Jersey Health Sys., 847 F. Supp. 1232, 1240 (D.N.J. 1994).

While this is a fact specific inquiry, State Farm Mutual Auto. Insur. Co. v. Coviello, 233 F.3d 710, 713 n. 1 (3d Cir. 2000), with regard to Mr. McLaughlin's Motion to Dismiss, the relevant facts are not disputed. As reflected in Mr. McLaughlin's underlying civil complaint, it is alleged that "Defendant, THI of Pennsylvania, LLC, a/k/a THI of Pennsylvania, Inc., is a corporation, duly licensed, organized and existing under and by virtue of the laws of Delaware, with offices and a place of business at 615 South Dupont Highway, Dover, Delaware, 19901."

(ECF No. 5-1, ¶ 19). In contracting for skilled nursing care, Mr. McLaughlin, through his wife as power of attorney, executed both the Admission Contract and Arbitration Agreement. In its Complaint in this action, THI alleges that Mr. McLaughlin "was a Medicare patient, like other residents at the Facility. Medicare paid a portion of the costs of [Mr. McLaughlin's] care, and the care of other residents, during his residency." ECF No. 1, ¶ 26.

Similar allegations have been found more than sufficient to satisfy the low threshold of "involving interstate commerce." Glover, 2014 WL 931459 *6, citing, THI of New Mexico at Hobbs Ctr., LLC v. Spradlin, 893 F. Supp.2d 1172, 1184 (D.N.M. 2012); Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, No. 3:10–1001, 2011 WL 1233320, at *10 (S.D.W.Va. Mar. 29, 2011) (interstate commerce requirement found to be satisfied where nursing home purchased medical supplies, equipment, food and cleaning supplies from out-of-state vendors, and where the resident's care was paid for with federal Medicare funds); Estate of Hodges v. Meadows, Civ. A. No. 12–cv–1698, 2013 WL 1294480, at *9 (E.D. Pa. Mar. 29, 2013)(a patient's admission into a care facility, memorialized through a resident agreement, "plainly involve[d] commerce," and, therefore, satisfied the interstate commerce requirement under the FAA). The Court agrees and finds that the Agreement implicates interstate commerce.

### C. Request for Discovery

Plaintiff alternatively has requested discovery to investigate alleged material issues of fact regarding whether there was a meeting of the minds regarding promises to arbitrate, whether the circumstances surrounding the execution of the Agreement indicate that it is an unconscionable adhesion contract or the product of fraud, duress or undue influence, and whether the Agreement is supported by adequate consideration. (ECF No. 5, at p. 14, n. 22).

Because of the procedural posture of this case, and because Defendant apparently contests the validity of the Agreement based upon facts not of record, the Court will not preclude Defendant from filing an Answer to the Complaint placing the validity of the Agreement at issue. Accordingly, the Court will permit the parties to engage in discovery limited in duration to sixty days following the filing of Defendant's Answer and limited in scope to the circumstances surrounding the execution of the agreement by Mary McLaughlin, on behalf of her husband. After the close of discovery, Plaintiff may file a motion to compel arbitration, and the Court will review that motion under the summary judgment standard by looking at all record evidence produced during discovery. <u>GGNSC Equity Holdings, LLC v. Breslin</u>, No. 14-MC-00450, 2014 WL 5463856, at *7 (M.D. Pa. Oct. 27, 2014)(citing <u>Guidotti v. Legal Helpers Debt Resolution, LLC</u>, 716 F.3d 764, 776 (3d Cir. 2013).

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 5) is DENIED without prejudice.

## ORDER

AND NOW, this 6th day of May 2015, upon consideration of Defendant's Motion to Dismiss (ECF No. 5) and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that Defendant's Motion to dismiss is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant shall file an Answer within 21 days from the date of this Order.

IT IS FURTHER ORDERED that the parties shall engage in discovery limited in duration for sixty days after the filing of an Answer and in no event beyond July 27, 2015, and limited in scope to the circumstances surrounding the execution of the agreement by Mary McLaughlin, on behalf of her husband.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:	All counsel of record by Notice of Electronic Filing